1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| CHANEL, INC., a New York Corporation,<br><br>Plaintiff,<br><br>v.<br><br>FE CORPORATION d/b/a CUSTOM CASES, a California Corporation; FARSHAD NAJAFI, an Individual; MM CELL CORP d/b/a CUSTOM CASESPHONE REPAIR, a California Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | No. 2:23-cv-02946 KJM AC<br><br><br>FINDINGS AND RECOMMENDATIONS |
|---|---|

This matter is before the court on plaintiff's motion for default judgment.  ECF No. 17. The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19).  For the reasons set forth below, the undersigned recommends plaintiff's motion be GRANTED, and that judgment be entered in favor of plaintiff.

**I.   Relevant Background**

On December 15, 2023, plaintiff Chanel, Inc. ("Chanel") filed this action against defendants FE Corporation d/b/a Custom Cases ("FE Corp"), MM Cell Corp d/b/a Custom Cases Phone Repair ("MM Cell"), and Farshad Najafi (collectively, "defendants") for Trademark Infringement and False Designation of Origin under the Lanham Act, as well as related claims of

1

trademark infringement and unfair competition under the statutory and common law of the state of California. ECF No. 1, Declaration of Tara A. Currie ("Currie Decl."), ¶ 2, Exh. A. The complaint arises out of defendants' importation, manufacturing, production, distribution, advertisement, marketing, offering for sale, and/or sale of counterfeit phone cases and accessories bearing unauthorized reproductions of plaintiff's federally registered trademarks (the "Accused Products"). Plaintiff alleges the "Chanel Marks have been used in interstate commerce to identify and distinguish Chanel's high-quality clothing, handbags, jewelry, watches, hair accessories, phone accessories, fragrance and beauty products among other goods for an extended period of time." ECF No. 1 at 5. Plaintiff alleges defendants design, manufacture, import, distribute, advertise, market, offer for sale, and/or sell phone accessory products that bear marks identical to, substantially indistinguishable from, or confusingly similar to the Chanel Marks (the "Accused Products"), with photos of examples in the complaint. ECF No. 1 at 5-6.

Summons were issued to defendants and each summons was returned executed between January 8, 2024 and January 22, 2024. ECF Nos. 6, 7, 8, 9, and 10. Defendants failed to file a responsive pleading or otherwise make an appearance in this action. The Clerk of the Court entered default against defendants on March 1, 2024. ECF No. 11. Plaintiff now requests that this court grant default judgment in favor of plaintiff and against defendants, and award $150,000 in statutory damages and injunctive relief. ECF No. 17. The motion for default judgment was taken under submission. ECF No. 18. Defendants did not respond to the motion for entry of default judgment and have not otherwise appeared in this case.

**II.     Motion**

Plaintiff moves for default judgment on all counts, seeking judgment in the amount of $150,000 and the issuance of a permanent injunction against defendants. ECF No. 17 at 19. Defendants have not appeared or filed any response.

**III.    Analysis**

A. <u>Legal Standard</u>

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend

against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1)   the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

Generally, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure

37 that the default conclusively established the liability of the defaulting party).

### B. The Eitel Factors

#### 1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, plaintiff would suffer prejudice if the court did not enter a default judgment because it would be without recourse for recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

#### 2. Factors Two and Three: Merits of Claims and Sufficiency of Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175. Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment. Plaintiff's four causes of action for Federal Trademark Infringement, False Designation of Origin, Unfair Competition under Cal. Bus. & Prof. Code § 17200, and Common Law Trademark Infringement and Unfair Competition are analyzed under the same test for federal trademark infringement because they all go to the essential question of likelihood of confusion. Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2008)(superseded by statute on other grounds); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988).

To state a claim for trademark infringement, the complaint must allege that the plaintiff: "(1) . . . has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." Department of Parks and Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006); see also Multi Time Machine, Inc. v. Amazon.com, Inc., 804 F.3d 930, 935 (9th Cir. 2015) ("To prevail on a claim of trademark infringement under the Lanham Act, a trademark holder must show that the defendant's use of its trademark is likely to cause confusion, or to cause mistake, or to deceive."). "The test for likelihood of confusion is

whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998). In evaluating the likelihood of confusion, the court employs an eight factor test. See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prod., 353 F.3d 792, 810 n.19 (9th Cir. 2003).

Here, plaintiff made the requisite allegation of protectable ownership in its complaint and supported the allegation with sufficient evidence. Registration of a mark with the U.S. Patent and Trademark Office is prima facie evidence of the validity of the registered mark and the registrant's exclusive right to use the mark on the goods and services. Brookfield Communs., Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1047 (9th Cir. 1999). Plaintiff attached its registration documents (ECF No. 17-5) and provided a list of registration numbers and dates (ECF No. 17 at 3).

Plaintiff also successfully addresses each factor of the Sleekcraft test for likelihood of confusion: (i) strength of the mark; (ii) proximity of the goods; (iii) similarity of the marks; (iv) evidence of actual confusion; (v) marketing channels used; (vi) type of goods and degree of care likely to be exercised by the purchaser; (vii) defendant's intent in selecting the mark; and (viii) likelihood of expansion of the product lines. See Sleekcraft, 599 F.3d at 348-49. The court now addresses these factors in turn.

        *(i)    Strength of the mark*

A "strong," or distinctive, mark is afforded greater protection under trademark law than a mark that is not strong. See, e.g., Sutter Home Winery, Inc. v. Madrona Vineyards, L.P., No. C 05-0587 MHP, 2005 WL 701599, *8, 2005 U.S. Dist. LEXIS 4581 (N.D. Cal. Mar. 23, 2005) ("The strength of protection afforded to a trademark is proportionate to the likelihood that the public will remember the mark and associate it with the source of the trademarked goods" (citations omitted)). When evaluating the strength of a mark, courts consider both conceptual and commercial strength. Id.

////

The conceptual strength of a mark "is determined by its placement on a continuum of marks from 'generic,' afforded no protection; through 'descriptive' or 'suggestive,' given moderate protection; to 'arbitrary' or 'fanciful' awarded maximum protection." E. & J. Gallo Winery, 967 F.2d at 1291 (quoting Nutri/System, Inc. v. Con-Stan Industries, Inc., 809 F.2d 601, 605 (9th Cir. 1987) (quotation marks omitted)). The nature of a mark is determined by the "imagination test" and a "need test." Id. (citing Earthquake Sound Corp. v. Bumper Industries, 352 F.3d 1210, 1221 n. 4 (9th Cir. 2003)). Using the "imagination test" the court asks how much imagination a consumer must use to associate a given mark with the goods or services it identifies, and using the "need test" the court examines the extent to which competitors need a mark to identify their goods or services. Earthquake Sound Corp., 352 F.3d at 1221 n. 4 (quoting Miss World (UK) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1449 (9th Cir. 1988)).

Applying these tests, the court finds that the Chanel marks are best classified as "arbitrary" and strong. The marks do not suggest or describe the product. Nutri/Sys., Inc., 809 F.2d at 605. Other courts have also found that "Chanel" marks are arbitrary and well recognized, strong marks. See, e.g., Chanel Inc. v. Christian Salvatore NY Corp., No. 3:22-CV-2218-K, 2023 WL 8242743, at *7 2023 U.S. Dist. LEXIS 212391 (N.D. Tex. Nov. 3, 2023), report and recommendation adopted, No. 3:22-CV-2218-K, 2023 WL 8244044 (N.D. Tex. Nov. 28, 2023); Chanel, Inc. v. Stevens, No. 07-81201-CIV, 2009 WL 10668566, at *4 2009 U.S. Dist. LEXIS 143961 (S.D. Fla. Oct. 20, 2009) ("it cannot be seriously disputed that the Chanel Marks are strong, arbitrary and fanciful marks"). Thus, the marks at issue here are entitled to maximum protection. E. & J. Gallo Winery, 967 F.2d at 1291. Because the marks are entitled to maximum protection and have significant commercial strength, this factor weighs heavily in favor of finding a likelihood of confusion.

    *(ii)*    *Proximity of the goods*

Plaintiff alleges that the Chanel Marks are used on phone accessories, the same type of goods as the Accused Products. Currie Decl., Exh. A at ¶¶ 12, 20. The Accused Products are identical to the Chanel Marks, as shown by the pictures reproduced in the Complaint. Id. at ¶¶

////

12, 20, 30, 49, 50, 59, 70.  There is proximity of the goods, and this factor weighs in favor of finding a likelihood of confusion.

### (iii) Similarity of the marks

The "similarity of the marks" portion of the Sleekcraft test "is the most crucial factor in determining the likelihood of confusion." Sutter Home Winery, Inc., 2005 WL 701599 at *5. Here, as stated above, the Chanel marks and the Accused Marks are substantially identical.  This factor weighs strongly in favor of finding a likelihood of confusion.

### (iv) Evidence of actual confusion

While evidence of actual confusion is not necessary to prevail on an infringement claim or to secure injunctive relief, it can provide persuasive evidence that future confusion is likely.  See Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1456 (9th Cir. 1991).  Plaintiff has not submitted evidence of actual confusion; this factor weighs neutrally.

### (v) Marketing channels used

Plaintiff markets and sells its products online, at boutique stores, and at malls.  Currie Decl., ¶ 12, Exh. E.  Defendants similarly sell the Accused Products at malls and retail stores. Currie Decl., Exh. A at ¶¶ 20-23.  The marketing and sales channels overlap, and this factor weighs in favor of finding a likelihood of confusion.

### (vi) Type of goods and degree of care likely to be exercised by the purchaser

Chanel products are luxury goods and consumers are likely to exercise a high degree of care in the purchasing process.  This factor weighs against finding a likelihood of confusion.

### (vii) Defendant's intent in selecting the mark

As to the seventh factor of intent, plaintiff has sufficiently alleged that defendants acted willfully and intentionally in committing the alleged infringement. Currie Decl., Exh. A at ¶¶ 25, 27, 31, 32, 35, 39, 42, 54, 60, 61, 64, 68, 69, 75, 77.  This factor weighs in favor of finding a likelihood of confusion.

////

////

1          *(viii)   Likelihood of expansion of product lines*

2          This factor evaluates whether a parties' product line is likely to expand to create
3 competition; where the parties are already in direct competition with one another, this factor is
4 not relevant. See, e.g., Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc., 457 F.3d 1062,
5 1078 n. 12 (9th Cir. 2006) ("The final factor, '[a] likelihood of expansion in product lines,'
6 warrants no discussion as it is 'relatively unimportant where two companies already compete to a
7 significant extent,' " quoting Brookfield Communications, 174 F.3d at 1060).

8          Based on a review of the entire record, the court finds that plaintiff has demonstrated
9 protectable ownership in the Chanel Marks at issue, and has shown a likelihood of confusion
10 stemming from defendants' unauthorized use. Accordingly, the second and third Eitel factors are
11 satisfied.

12          3.   Factor Four: The Sum of Money at Stake in the Action

13          Under the fourth Eitel factor, the court considers the amount of money at stake in relation
14 to the seriousness of defendant's conduct. Here, plaintiff seeks $150,000 in statutory damages
15 and injunctive relief. The Lanham Act provides for statutory damages in the amount of "(1) not
16 less than $ 1,000 or more than $ 200,000 per counterfeit mark per type of goods or services sold,
17 offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of
18 the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark." 15 U.S.C. §
19 1117(c). "A court has wide discretion to determine the amount of statutory damages between
20 the statutory maxima and minima." Microsoft Corp. v. Coppola, 2007 U.S. Dist. LEXIS
21 40515 at *12, 2007 WL 1520964 (N.D. Cal. May 24, 2007) (citing Harris v. Emus Records Corp.,
22 734 F.2d 1329, 1335 (9th Cir. 1984)). Factors considered under the Lanham Act follow the
23 analogous statutory provision of the Copyright Act and include (1) "the expenses saved and the
24 profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the
25 deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was
26 innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from
27 which to assess the value of the infringing material produced;" and (7) "the potential for
28 ////

discouraging the defendant." Tiffany (NJ) Inc. v. Luban, 282 F.Supp.2d 123, 125 (S.D.N.Y., 2003); Microsoft, 549 F.Supp.2d at 1237.

Here, the amount at issue is proportionate to the seriousness of defendants' conduct and this factor favors entry of default judgment. Calculating the expenses saved and profits reaped by defendants, or the revenues lost by plaintiff, has been rendered impossible by defendants' failure to respond to the complaint, thus, the first two factors, weigh neutrally. Microsoft, 549 F.Supp.2d at 1238 (holding that a lack of evidence as to the first two prongs did not preclude an award of statutory damages in plaintiff's motion for default judgment). The sixth factor also relates to defendants' lack of participation in this case, and favors plaintiffs, because defendants have not appeared or cooperated at all in this action. As to the third factor, it is indisputable that the Chanel marks are highly valuable. Chanel, Inc. v. Gardner, No. 07-CV-6679-GBD-MHD, 2010 WL 11713301, at *9, 2010 U.S. Dist. LEXIS 140233 (S.D.N.Y. Apr. 6, 2010), report and recommendation adopted, No. 07-CIV-6679-GBD-MHD, 2011 WL 204911 (S.D.N.Y. Jan. 21, 2011)("the value of Chanel's trademark is high."). This factor favors a finding in plaintiff's favor.

The fourth and seventh factors relate to the deterrence policy underlying 15 U.S.C. § 1117(c). The Ninth Circuit has articulated a deterrence policy to discourage trademark infringement. See Playboy Enters., Inc. v. Baccarat Clothing Co., 692 F.2d 1272 (9th Cir. 1982). The court agrees with plaintiff that statutory damages are appropriate and necessary for deterring the manufacture and sale of counterfeit goods. As to the fifth factor of willfulness, an allegation of willful trademark infringement is deemed true on default. Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir., 2008). Plaintiff properly alleged that defendants' conduct was willful and done with the intent to harm plaintiff and deceive the public. Currie Decl., Exh. A at ¶¶ 25, 27, 31, 32, 35, 39, 42, 54, 60, 61, 64, 68, 69, 75, 77.

The complaint alleges that defendants infringed upon at least three marks. ECF No. 1 at 3. Pursuant to the statute governing damages, defendants' willful counterfeiting of the marks mandates an award of up to $6 million ($2 million per infringed mark) under 15 U.S.C. § 1117(c). However, plaintiff only seeks $150,000, a fraction of recoverable damages. This weighs in

plaintiff's favor. In summary, the monetary damages requested are proportionate to the seriousness of defendants' conduct.

With respect to the request for injunctive relief, the court agrees that plaintiff will suffer irreparable harm to its brand and reputation if defendants' conduct is not enjoined because the Accused Products contain identical reproductions of the Chanel Marks. See Chanel, Inc. v. Lin, 2010 U.S. Dist. LEXIS 61295, *34 (N.D. Cal., May 7, 2010) (plaintiff established likelihood of confusion by showing defendant's use of counterfeit Chanel Marks, giving rise to a presumption that plaintiff would suffer irreparable harm if injunctive relief was not granted). By ignoring the present lawsuit, defendants have shown a disregard for their infringing conduct and will likely continue such activities, whether on the Accused Products or other products. This requested remedy is proportionate to the conduct at issue and also favors entry of default judgment.

### 4. Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.

### 5. Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, the court finds no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff served the defendants with the summons and complaint. ECF Nos. 6, 7, 8, 9. Moreover, plaintiff served defendants by mail with notice of its application for default judgment. ECF No. 17-1 at 2. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants failed to defend themselves in this action. Thus, the record supports a conclusion that

the defendants have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

      6.   Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

      7.   Conclusion: Propriety of Default Judgment

Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendants. What remains is the determination of the remedy to which plaintiff is entitled.

  C.  Terms of Judgment

Plaintiff's motion for default judgment includes a request for a permanent injunction enjoining defendants from using the "Chanel" Marks. ECF No. 15-13 at 2. 15 U.S.C. § 1116(a) provides that a district court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court deems reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." A permanent injunction may be granted where the plaintiff demonstrates: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing

infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988). Moreover, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 n.3 (9th Cir. 1989). And "the public has an interest in the enforcement of federal statutes." CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008). In light of the fact that there is no hardship to the defendant in enjoining defendant from using an identical mark to plaintiff's registered mark, the court recommends that plaintiff be awarded a permanent injunction.

As discussed above, plaintiff also seeks statutory damages in the amount of $150,000. In the analysis above, the court determined this amount to be reasonable under the circumstances, as it is well beneath the possible $2 million in statutory damages per infringed mark. The court the requested statutory damages should be awarded.

### IV.    Conclusion

It is RECOMMENDED THAT:

1. Plaintiff's June 6, 2024 motion for default judgment, (ECF No. 17) be GRANTED;

2. The court enter judgment against the defendant on the complaint's claims Trademark Infringement, False Designation of Origin, Unfair Competition under Cal. Bus. & Prof. Code § 17200, and Common Law Trademark Infringement and Unfair Competition;

3. The court enjoin defendants, and all persons acting by, through, or in concert with the defendants, from using plaintiff's trademarks in any manner;

4. The court grant plaintiff's request for statutory damages in the amount of $150,000; and

5. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: August 6, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE